IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CANDE ESPINOZA,

    Plaintiff,

vs.

OFFICER KELLOGG, et al.,

    Defendants.

No. C 12-5414 YGR (PR)

**ORDER OF SERVICE AND ADDRESSING PENDING MOTION**

## INTRODUCTION

Plaintiff, a state prisoner incarcerated at Pelican Bay State Prison ("PBSP"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff also seeks leave to proceed *in forma pauperis*, which will be granted in a separate Order.

Venue is proper because the events giving rise to the claim are alleged to have occurred at PBSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: PBSP Correctional Officers T. Kellogg and G. Maciel. Plaintiff seeks monetary damages.

On November 30, 2012, Plaintiff filed a motion to screen the complaint (Docket No. 3). Plaintiff's motion to screen the complaint is GRANTED. The Court now reviews the claims raised in Plaintiff's complaint. Defendants shall respond to the allegations in the complaint as set forth below.

## DISCUSSION

**I.**     **Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings

must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. Legal Claims

On July 1, 2011, Plaintiff and several inmates at PBSP began staging a hunger strike to protest the conditions of PBSP SHU. Plaintiff decided to join the hunger strike in an effort to peacefully protest his dissatisfaction with the "SHU placement policy, gang management and horrendous SHU conditions" at PBSP, and exercise his right to free speech. (Compl. at 6.) Plaintiff ended his hunger strike on July 18, 2011, when he was taken to the SHU prison hospital at California State Prison - Corcoran "due to his deteriorating health." (*Id.*)

On July 21, 2011, the hunger strike officially ended when prison officials from the California Department of Corrections and Rehabilitation ("CDCR") "begrudgingly agreed to address inmates['] complaints after receiving pressure from the public, media and public safety committees of the state legislature." (*Id.*) Plaintiff claims that many PBSP officers, specifically those assigned to the SHU, were "unhappy about [the] CDCR's agreement to visit inmate[s'] complaints . . . ." (*Id.* at 7.)

After Plaintiff returned to his cell at the SHU at PBSP, he claims that officers started to search his cell more than once a week. Plaintiff states that this was against PBSP's SHU policy, which states that "an inmate's cell shall not be searched more than once a week." (*Id.* at 8.)

On September 5, 2011, Plaintiff states that PBSP Correctional Officer Max searched his cell.

On September 6, 2011, Plaintiff claims that he noticed that Defendant Kellogg was searching his cell during yard time. Plaintiff asked Defendant Kellogg why he was searching his cell when it was "just searched the day prior." (*Id.*) Plaintiff claims that Defendant Kellogg "responded by laughing at Plaintiff and telling Plaintiff that he will do everything in his power to get his cell searched everyday." (*Id.* at 9.) After yard time, Plaintiff returned to his cell and "found it in shambles." (*Id.* at 9.) Plaintiff complained to the control booth officer. As Plaintiff cleaned and re-

2

organized his cell, he discovered the Defendant Kellogg damaged his personal property, including his letters and pictures, his ear buds, and his television buttons.

The following day, September 7, 2011, Defendant Maciel searched his cell. Plaintiff asked Defendant Maciel why his cell was being searched for the third day in a row, and Defendant Maciel answered that "he did not have anything against Plaintiff." (*Id.* at 10.) Plaintiff claims that he asked Defendant Maciel for a "Citizen's Complaint Form." However, Defendant Maciel denied Plaintiff's request and "told Plaintiff 'he was not a citizen.'" (*Id.* at 11.)

Plaintiff alleges that Defendants Kellogg's and Maciel's actions of searching his cell against prison policy was an adverse action taken because of he exercised his right to free speech by participating in the hunger strike, i.e., a protected conduct. Plaintiff also claims that Defendant Kellogg's actions of destroying his personal property violated the Eighth Amendment. Finally, Plaintiff claims that Defendant Maciel's "refusal to give Plaintiff a 'Citizen's Complaint Form' because he is not a citizen violate[d] Plaintiff's 14th Amendment [rights]." (*Id.* at 13.)

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Accordingly, a prisoner suing prison officials under § 1983 for retaliation must allege he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). The prisoner also must allege the defendants' actions caused him some injury. *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000). Liberally construed, Plaintiff's complaint states a cognizable First Amendment claim that Defendants Kellogg and Maciel retaliated against him when they maliciously searched his cell.

To the extent Plaintiff alleges that Defendant Maciel violated his constitutional rights by

denying his request for a Citizen's Complaint Form, that claim is dismissed. There is no constitutional right to a prison administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). In any event, Plaintiff claims that he was able to file a 602 inmate appeal form relating to the claims in his complaint. (Compl. at 2.)

To the extent Plaintiff claims that Defendant Kellogg intentionally or negligently destroyed his personal property, that claim is dismissed. Neither the intentional nor negligent deprivation or destruction of an inmate's property states a claim under § 1983 if the deprivation was random and unauthorized. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property)*; Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (where state cannot foresee, and therefore provide meaningful hearing prior to, deprivation statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). California law provides such an adequate post-deprivation remedy. *See Barnett v. Centoni,* 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion to screen the complaint (Docket No. 3) is GRANTED.

2. Plaintiff's complaint states a cognizable First Amendment claim of retaliation against Defendants Kellogg and Maciel. Plaintiff's remaining claims are DISMISSED without prejudice.

3. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (Docket No. 1) and a copy of this Order to **PBSP Correctional Officers T. Kellogg and G. Maciel**. The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the California State Attorney General's Office. Additionally, the Clerk shall mail a

4

copy of this Order to Plaintiff.

4. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

5. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a. No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[1] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods*, 684 F.3d at 935 (notice requirement set out in

---

[1] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), must be served concurrently with motion to dismiss for failure to exhaust available administrative remedies).

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

      b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

      c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by the defendants in their motion to dismiss. *Wyatt*, 315 F.3d at 1120 n.14. You have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include:
(1) declarations, which are statements signed under penalty of perjury by you or others who have

6

personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. *Stratton*, 697 F.3d at 1008-09.

(The *Rand* and *Wyatt/Stratton* notices above do not excuse Defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

    d.    Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

    e.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

6.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

7.    All communications by Plaintiff with the Court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

8.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

9.    Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the

7

deadline sought to be extended.

10. This Order terminates Docket No. 3.

IT IS SO ORDERED.

DATED: September 24, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**